# EXHIBITS I - T

**EXHIBIT I**

EXHIBIT

VAIL - 19
3-24-04 NC

**Weinstein, Gary**

| | |
|---|---|
| **From:** | Vail, Kenneth |
| **Sent:** | Thursday, July 20, 2000 7:54 AM |
| **To:** | Weinstein, Gary |
| **Subject:** | RE: Update |

Gary

Just a follow up to our discussion of 7/17 & your message of 7/15. I'm glad I have been able to contribute, even though I experienced a serious injury & was advised by my surgeon that it's normally a 12 week process - at best - to return to work. Perhaps the work schedule that we originally discussed was too much, too fast. It made sense when we originally discussed it on June 14th, but was later a struggle for me to implement.

The week of June 26th you left me a voice mail expressing your displeasure with the vendor situation. I fully understand your concern. I was really hurting the week of June 26th, & I did my best to process all of the vendor reports that I had on hand via email. I was physically & mentally exhausted at the end of the week. I needed the entire weekend of "July 4th" to recover. On July 6th I asked if you would consider reduced hours for the weeks of July 10 & 17, and you didn't want to do that.

As of July 16th, I'm entirely off of my pain medication. I'm much stronger now, & I'm able to sit/work for much longer periods. You can see that reflected in my connection times.

Yesterday, July 19, I met with my surgeon. He took new x-rays, & said that my healing is on track. I'm making progress, & expect to fully recover.

I understand that the report reviews are important, & I plan to get these back on track.

We've been crunched with survey requests due to some staffing issues, as you know. I understand that the service files are important. Before I was injured, I had planned to have these files duplicated in the Region by June 15, 2000. My injury put this back. I now expect to have these files recreated by the end of July. I have some of this information electronically, and will begin reviewing this info as soon as I've reviewed survey reports for all of my staff. The service review will begin before the end of July.

Compounding the issue is an inexperienced Administrative Assistant, who is, quite frankly, frazzled.

I look forward to getting things back on track. I appreciate your feedback & take it seriously. I appreciate your consideration and understanding. I'm glad to have the opportunity to contribute. I don't want to be in a position of failure because I did not take the necessary time to heal properly. I'm sure you can understand that. I'm willing to do any schedule that makes sense and is mutually beneficial.

Thanks again for your feedback.
Ken

-----Original Message-----
From: Weinstein, Gary
To: Vail, Kenneth
Sent: 7/15/00 2:55 PM
Subject: RE: Project Update

Thanks for the update.

I think it is good that you are completing some of the tasks assigned.

I know you have many tasks/duties competing for your time.  I am in the process of finalizing a template for all regional Loss control managers outlining the timing, priority and frequency of certain tasks required.

Due to your injury you are not currently tasked with riding with the staff, attending staff or branch or agent or agency council meetings. Day to day supervision and training of your region's administrative assistant has been transferred to Craig Campbell.

This temporarily removes at least 30% of the normal workload/tasks expected of a regional manager.

The tasks we talked about repeatedly prior to and following your injury include promptly reviewing and rewriting the recommendations and transmitting all vendor reports, and performing no less than 5 QC report reviews per month per staff member and providing written feedback on each report reviewed (until you are able to spend multiple days riding with the staff, you need to provide written feedback on at LEAST 10 reports per staff member, more reviews if quality is below standard.)

Additionally, you were asked to review all existing service files from your region and evaluate the service being provided, with written feedback to the staff member and file on suggestions for future service and a critique regarding the existing plan.  After completing a review of the existing files you need to promptly review the top 200 list of accounts for each of your regions branches to review previous surveys and service provided and to generate survey/service requests for you or staff to work with these accounts.

Ken, while you are completing some tasks, you repeatedly put off certain tasks that I have identified as essential.  It took an unexceptably long time to review and transmit the vendor reports that were sent to you electronically.  You are also not reviewing the  paper vendor reports for price, quality, and recommendations.

In summary, your task is to promptly assign the work, monitor the time service, production, and quality (vendor and staff), and take the necessary actions to bring deficient areas up to standard.  This includes training, mentoring and grooming.  Additional administrative tasks including assigning survey work and paying vendor bills, completing performance reviews, and so on must be completed in a timely manor.

Your success going forward depends on your timely and thorough completion of all of the above tasks.

**EXHIBIT J**

EXHIBIT
VAIL - 14
3-24-04 KOC

**Geckeler, Alice**
**From:**      Weinstein, Gary
**Sent:**      Wednesday, June 21, 2000 2:20 PM
**To:**        Vail, Kenneth
**Subject:**   vendor reports


Please review and delete, or rewrite any recs and send electronically to Carley
for transmittal to the underwriters and recs to policyholders.  This is a top priority
as we are getting inquiries/complaints regarding time service.  Some may be due
to staffing changes/shortages,and some due to vendors.  Lets make sure we
don't add any delay to the process.

I would like you to concentrate on QC reviews and feedback to staff on reports,
survey assignments to staff, and vendor report and rec review.  you need to
review all vendor reports with recs to see if they should be deleted, rewritten, or
what ever.  This is not some thing that Carley can do.  When you review the
vendor reports you should also get an electronic transmittal indicating the price
for that report.  You need to be comfortable with the prices being charged.

Hope all went well with the doctor today..... we are all wishing you a safe and
speedy recovery.  Call me tomorrow am to chat.

Gary Weinstein, CPCU
Vice President Loss Control & Premium Audit
Voice (215) 256-5280     Fax (215) 256-5761

**EXHIBIT K**

**Weinstein, Gary**

| | |
|---|---|
| From: | Weinstein, Gary |
| Sent: | Tuesday, July 18, 2000 10:58 AM |
| To: | Vail, Kenneth |
| Subject: | Vendor requests |

EXHIBIT
VAIL-18
5-24-04 NPC

Ken, I am not sure how much Carley has told you but we have a real major problem with overdue work in your territory. She has received at least 20 inquiries form underwriters looking for late stuff. Instead of getting the message to the rep or vendor, she simply tells the underwriter who has the old work, not how or when it will get done. We have a total breakdown in service.

I called Alan Benancasta Because Carley happened to mention that 8 days ago the office admin asst sent a fax asking for more time on more than **FIFTY** open requests for survey. She did not respond to them. I called Alan worked a deal where he will pull out all the stops and get the work all done with in the next 10 days. He said that you told him you knew it was late and that he should just get it when he could no special rush.   I did not DEMAND he do it ASAP, but worked with him and told him my situation with the complaining underwriters. He agreed to help.

To expedite the workflow it will all be sent back to Bill Cassel for same day processing.

Ken, the service level in your region is unexceptably poor. We must provide substantially better service to our underwriting customer. Bill, Craig and I are all spending way too much time managing your region.

Gary Weinstein, CPCU
Vice President Loss Control &  Premium Audit
Voice (215) 256-5280    Fax (215) 256-5761

**EXHIBIT L**

EXHIBIT

VAIL - 21

3-24-04 KDC

**Geckeler, Alice**

| | |
|---|---|
| **From:** | Weinstein, Gary |
| **Sent:** | Wednesday, July 26, 2000 5:07 PM |
| **To:** | Vail, Kenneth |
| **Subject:** | Priorities |

Ken, I was reflecting on the convesation we had earlier today, and wanted to provide the following clarification:

Please stay on track for delivery of the management assesment and employee hiring practices evaluation (and aplication and case study aspects) for the close of business on Thursday July 27. Basically powerpoint slides should be done by then (Even if not in powerpoint format) as well as outline and deliverables. Deliverables are the instructions to the staff regarding how to present the management and employee hiring practices assesment (what to cover, how to report).

Additionally, we are very, very long overdue on providing report review feedback to all of your staff members. We have discussed your completing no less than 5 reviews per staff member per month and doubling that to 10 per staff member during your injury recovery as you are not able to meet with or travel with your staff. The few I have seen completed are good. How ever, I am spending WAY too much time discussing this topic with you every week, trying to get you to complete the first round for each staff member and move on to the next. You have repeatedly committed to completing these (on an ongoing basis) and not even completed 5 report reviews for half of your staff members during your entire term with Harleysville. Please quickly increase the pace of report reviews. Your staff deserves your feedback.

**EXHIBIT M**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH T. VAIL,                          :
                                          : No. 02-CV-2933
        Plaintiff                  :
                                          :
    v.                                    :
                                          :
HARLEYSVILLE GROUP, INC.,                 :
                                          : JURY TRIAL DEMANDED
        Defendant                  :
                                          Electronically Filed


### <u>VERIFIED STATEMENT</u>

I, Alice Geckeler, state as follows:

1.      I am the Assistant Vice President, Recruitment and Retention in the Human

Resources Department of Harleysville Group, Inc. ("Harleysville").

2.      The Supervisors' Supplement to Harleysville's Employee Manual guides

supervisors and managers in providing performance improvement for employees and states in

relevant part:

> The procedures listed below are to be used to aid an employee in
> correcting performance problems. The sooner a problem is
> addressed, the sooner it will be corrected. For instance, if it is
> obvious in the first month of employment that the employee cannot
> do the job for which he or she was hired, termination can occur
> fairly easily after holding corrective discussions with the
> employee.
>
> The Company reserves the right to terminate employment at will,
> with or without reason, at any time. Depending on the
> circumstances, the Company may however, try to correct the
> problem first....

1

3.     The guide does not mandate any one method or procedure for performance improvement, and there is no specific requirement that employees be placed on a formal corrective action plan before termination.

4.     In fact, the guide specifically states that some or all of the steps (verbal discussion, written warning, plan for improvement, plan for improvement with probation) may be used, as appropriate, based on the situation.

5.     The guide differentiates between the level of counseling and warning necessary depending on an individual's length of service reflecting that, for short-tenured employees, less formal corrective action is expected than for longer-tenured employees.

6.     Kenneth Vail ("Vail") received consistent counseling and warning of the type and level to be expected given his short tenure.

7.     On or about August 31, 2000, following a conference near Hershey, Pennsylvania, I met with members of Vail's staff at their request.

8.     The staff members in attendance at the meeting included John Diehl, Bob Griffin, Bob Panteleo, Ted Semetowsky, Ann Dymond, Gary Gillespie, Jerry Walker, Scott Welch, and Bill Cassell.

9.     In the meeting, staff members expressed serious concerns about Vail as their manager.  The comments I heard included the following:

- that he only did 5 reviews over a four-month period
- that he is confrontational
- that he intimidates staff saying, "I'll fire you."
- that he lied to the staff about his accident
- that he made disparaging remarks and belittled staff
- that he made an insensitive comment about a staff member's wife who was pregnant saying to the staff member "are you sure it is yours?"
- that he is cocky, arrogant, short and rude
- that he does not give direction
- that he nit-picks reports

2

- that he had alienated staff
- that he does not know how to assign work
- that he treats staff like commodities
- that a staff member did not want to go on field visits with him and dreaded the possibility
- that staff were offended when he held a meeting he termed a "come to Jesus meeting"
- that he micro-managed staff

10.    At least one staff member told me that he would resign if Vail was allowed to continue in his job, and several staff members told me that they had sent out resumes in search of other employment opportunities.

11.    Based on the severity of the complaints, it was clear that Vail had lost the trust of his staff.

12.    I told Gary Weinstein about the staff's comments, and based on Vail's performance problems and the lack of credibility he had with his staff, Gary Weinstein made the decision to terminate Vail. I agreed with the decision.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 14, 2004                                *Alice Geckeler*
                                                         ALICE GECKELER

3

**EXHIBIT N**



**The Harleysville**
**Insurance Companies**

Donna M. Dever
Assistant Vice President and
Assistant General Counsel

355 Maple Avenue
Harleysville, PA 19438-2297
(215) 256-5063
Fax: (215) 256-5631
ddever@harleysvillegroup.com

October 6, 2000

Mr. Donald P. Russo
117 East Broad Street
P.O. Box 1890
Bethlehem, PA  18016-1890

Dear Mr. Russo:

Catherine Strauss asked me to respond to your letter to her dated 9/26/2000. As you requested, I have enclosed a copy of Mr. Vail's personnel file.

The letter Mr. Vail received from the Human Resources Department regarding his termination should not have been sent to him – it was a mistake. Mr. Vail's position, the Loss Control Manager for the Mid-Atlantic region, was not eliminated. Additionally, the letter erroneously excluded the cost of continuing health insurance under COBRA. Mr. Vail's cost for COBRA health insurance will be $386.76 per month, for dental coverage will be $61.77 per month and $10.62 per month for vision. Moreover, Mr. Vail should not have been given 45 days to decide whether to accept the severance offer. Therefore, please disregard the letter.

As Mr. Vail knows from the meeting he attended on 9/7/00 with Gary Weinstein and Alice Geckeler, his employment was terminated because of his poor performance of his job duties. Neither his age nor his physical limitations played a role in the decision to terminate his employment.

Mr. Vail was hired by Harleysville as a Loss Control Manager for the Mid-Atlantic Region on 3/27/00. He worked out of the Harleysville office. Less than 10 weeks after he was hired, on Monday, 6/5/00, Mr. Vail informed Harleysville that he was injured and was unable to report to the office. Mr. Vail originally told his boss, Gary Weinstein, that he had injured himself when he fell off of a tower, had undergone surgery and was hospitalized. Two days later, Mr. Vail advised his boss that he had not fallen off of a tower but had been accidentally been shot at a National Tactical Invitational Event. By the end of the week, Mr. Vail had advised his boss that he expected to be able to perform his job duties from home. Despite the fact that Mr. Vail had lied about the nature of his injury, his boss agreed to let him work from home. Mr. Vail started to work from home on 6/19/00.

A National Network of Regional Insurers

Great Oaks Insurance Company
Harleysville-Atlantic Insurance Company
Harleysville-Garden State Insurance Company
Harleysville Insurance Company of New Jersey
Harleysville Life Insurance Company

Harleysville Mutual Insurance Company
Huron Insurance Company
Lake States Insurance Company
Mainland Insurance Company
Mid-America Insurance Company

Minnesota Fire and Casualty Company
New York Casualty Insurance Company
Pennland Insurance Company
Worcester Insurance Company

VAIL   027

Mr. Donald P. Russo
Page 2
October 6, 2000

Mr. Vail was not eligible for any vacation or salary continuation benefits because he had been employed by the company for less than six months. Nonetheless, the Company paid him his full salary for one of the two weeks he was unable to work. Thereafter, the Company paid him his full salary for performing his job responsibilities from home.

About a week after Mr. Vail started working from home, his boss questioned why he had not completed certain assignments. Mr. Vail indicated that he was still low on energy. His boss offered him the opportunity to work part-time, but Mr. Vail refused and indicated he could work full time. Mr. Vail's job performance continued to be unsatisfactory and, on 7/20/00, his boss again offered him the opportunity to work part-time. Mr. Vail also refused this offer.

Even though he was considered full-time, Mr. Vail's injury prevented him from performing, temporarily, 30% of his responsibilities. Specifically, he was unable to ride with his staff, attend staff, branch, agency and agency council meetings. Despite these limitations, Harleysville paid him his full wages.

Additionally, both before and after his injury, Mr. Vail did not adequately perform the job duties that he was physically capable of performing. He did not promptly review, revise and transmit vendor reports. He did not prepare a sufficient number of quality control reports for his staff members. He did not review all existing services files from his region or review of the top 200 list of accounts for his region to generate survey/service requests for these accounts. Mr. Vail's boss repeatedly brought these matters to Mr. Vail's attention, but he did not fulfill his responsibilities. Moreover, during the Loss Control Conference in the end of August, it came to light that Mr. Vail's staff was very displeased with his management skills and style. Some of his staff members believed that he made inappropriate and disparaging comments.

Because of all of the issues with Mr. Vail's performance, Mr. Vail's boss decided to terminate his employment. The company decided to offer Mr. Vail a severance package to assist him in the transition period following the termination of his employment, in exchange for a release of all claims. The company made this offer despite Mr. Vail's poor performance and his very short tenure with the Company.

Mr. Vail, who is not even 43 years old, does not have a valid claim under the Age Discrimination in Employment Act. His boss and the Human Resources consultant, who decided to terminate his employment, are both a few years older than Mr. Vail. Additionally, Mr. Vail is not a qualified individual with a disability because he is not disabled as defined by the Americans with Disabilities Act ("ADA"). He does not have, does not have a record of having, and was not regarded as having a physical or mental impairment that substantially

VAIL   028

Mr. Donald P. Russo
Page 3
October 6, 2000

limits a major life activity.  The ADA regulations specifically exclude from the definition of physical or mental impairment conditions such as temporary conditions such as broken limbs and sprained joints.  Despite the fact that Mr. Vail is not, and was not, protected by the ADA, Harleysville provided him an accommodation during his healing period and paid him his full salary even though it had no legal obligation to do so.

In light of all the above, Harleysville will not increase the amount of its offer of severance.  If Mr. Vail does not accept the outstanding offer by October 20, 2000, it will be revoked as of October 20 at 4:00 p.m.  If Mr. Vail would like to accept the offer of severance, please call me before 4:00 p.m. on October 20.

Very truly yours,

Donna M. Dever

DMD:ecg
Enclosure
cc:  Catherine B. Strauss

I:\publ\hmic\dmd\00009393.DOC

**EXHIBIT O**



**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

KENNETH VAIL and PAMELA VAIL,  
          **Plaintiffs**

    **VS.**

PETER T. GILL,  
          **Defendant**

: NO.
: **3: CV    02-0926**
:
: **CIVIL ACTION - LAW**
:
: **JURY TRIAL DEMANDED**

FILED
SCRANTON

MAY 2 9 2002

**COMPLAINT**

1. Plaintiffs, Kenneth and Pamela Vail are adult individuals residing at 4513 Greenfield Road, Bethlehem, Northampton County, Pennsylvania.

2. Defendant, Peter T. Gill is an adult individual residing at 36 Tanglewylde Avenue, Bronxville, New York 17078.

3. The District Court has jurisdiction over this controversy in that the Plaintiffs and Defendant are of diverse jurisdictions and the amount in controversy exceeds Fifty Thousand ($50,000.00) Dollars, exclusive of costs as per 28 R.S.C.A. Section 1332.

4. On or about June 2, 2000, Plaintiff, Kenneth Vail was a Range Officer at the National Tactical Invitational in Lewisberry, Pennsylvania.

5. At the time, date and place aforesaid, Defendant, Peter T. Gill was a participant in the National Tactical Invitational and was assigned to the Plaintiff, Kenneth Vail.

6. At the time, date and place aforesaid, Plaintiff, Kenneth Vail instructed the participants and advised them that the Range Officer would be present with them through the first stage of the drill.

7. At the time, date and place aforesaid, Plaintiff, Kenneth Vail was taking Defendant, Peter T. Gill through the first stage of the event when the Defendant negligently and carelessly shot the Plaintiff, Kenneth Vail, causing him serious bodily injuries and other damages hereinafter more particularly described.

8. As a direct and proximate result of the above described occurrence, the Plaintiff, Kenneth Vail was airlifted to Hershey Medical Center for emergency treatment.

9. As a direct and proximate result of the above described occurrence, the Plaintiff suffered serious bodily injuries including, but not limited to a gunshot wound to the right thigh, fractured femur, bone grafting and scarring, all of which have been to his great financial loss.

10. As a direct and proximate result of the above described occurrence, the Plaintiff had to undergo several surgeries including bone grafting, all of which has been to his great financial loss.

## FIRST CAUSE OF ACTION

## COUNT I

11. Plaintiff incorporates by reference all the allegations contained in paragraphs one through ten inclusively, as though the same were set forth more fully at length herein.

12. At the time, date and place aforesaid, the careless and negligent acts of the Defendant consisted of the following:

a). In negligently shooting the Plaintiff;

b). In failing to follow the basic rules of engagement;

c). In failing to properly identify his target before placing his finger on the trigger of his weapon.

d). In pointing his loaded firearm at his Range Officer and shooting Kenneth Vail;

e). In failing to positively identify his target prior to shooting.

13. As a direct and proximate result of the above described occurrence, the Plaintiff suffered serious bodily injuries as set forth more fully at length in this Complaint.

14. As a direct and proximate result of the above described occurrence, the Plaintiff suffered great mental anguish and physical pain up to the date of the filing of this Complaint, all of which has been to his great financial loss.

15. As a direct and proximate result of the above-described occurrence, the Plaintiff will

continue to suffer great mental anguish and physical pain into the future, all of which will be to his great financial loss.

16. As a direct and proximate result of the above described occurrence, the Plaintiff has been unable to pursue his usual occupation for extended periods of time from the date of the incident upon which this cause of action is based to the date of the filing of this Complaint, and has suffered lost wages and other lost employment benefits up to the date of the filing of this Complaint, all of which has been to his great financial loss.

17. As a direct and proximate result of the above-described occurrence, the Plaintiff has been unable to pursue and enjoy the usual activities of life of an individual of the Plaintiff's age, and has suffered a loss of enjoyment of life, loss of life expectancy, loss of happiness and loss of the pleasures of life up to the date of the filing of this Complaint, all of which has been to his great financial loss.

18. As a direct and proximate result of the above-described occurrence, the Plaintiff will, in the future, be unable to pursue and enjoy the usual activities of life of an individual of the Plaintiff's age, and has suffered a loss of enjoyment of life, loss of life expectancy, loss of happiness and loss of the pleasures of life up to the date of the filing of this Complaint, all of which has been to his great financial loss.

### COUNT II

**PAMELA VAIL**
**Vs.**
**PETER T. GILL**

19. Plaintiff incorporates paragraphs one through eighteen inclusively, as though the same were set forth more fully at length herein.

20. As a sole result of the carelessness and negligence of Defendant as more fully set forth above, Spouse-Plaintiff has been obliged to incur and may continue to incur for an indefinite period of time into the future many costs for medicine, medical care and

attention, and hospitalization in an attempt to treat Plaintiff for the injuries caused to him by this accident, all to her great financial loss and detriment.

21. As a further result of the carelessness and negligence of Defendant as more fully set forth above, Spouse-Plaintiff has been deprived of the society, comfort, assistance, and consortium of her husband, Plaintiff, and may continue to be deprived of the foregoing for an indefinite period of time into the future, all to her great financial loss and detriment.

WHEREFORE, Plaintiffs demand judgment against the Defendant for a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars.

KNAFO LAW OFFICES

By_____
Jerry R. Knafo, Esquire
I.D. # 36575
2740 Nazareth Road
Easton, PA 18045

ATTORNEY FOR PLAINTIFFS

## VERIFICATION

I, Kenneth Vail and Pamela Vail,  Plaintiffs in the within action, being duly sworn according to law, depose and say that the facts contained in the foregoing pleading are true and correct to the best of my knowledge, information and belief.

_____
Kenneth Vail

_____
Pamela Vail

Sworn to and subscribed before

Me this 24th day of May

2002.

_____

Notarial Seal
Suzanne A. Koch, Notary Public
Palmer Twp., Northampton County
My Commission Expires May 31, 2004
Member, Pennsylvania Association of Notaries

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KENNETH VAIL and PAMELA VAIL,** | : NO. |
| **Plaintiffs** | : |
| | : |
| **VS.** | : |
| | : **CIVIL ACTION - LAW** |
| **PETER T. GILL,** | : |
| **Defendant** | : **JURY TRIAL DEMANDED** |

### CERTIFICATE OF SERVICE

I, Jerry R. Knafo, Esquire, attorney for the Plaintiff do hereby certify that the within document was served upon the Defendant, Peter T. Gill, by way of U.S. Mail, Certified, return receipt requested on the 25th day of May, 2002.

KNAFO LAW OFFICES

By_____

Jerry R. Knafo, Esquire

**EXHIBIT P**

EXHIBIT
VAIL-31
6-11-04 RPC

## GENERAL RELEASE

KNOW ALL MEN BY THESE PRESENTS that we, Kenneth T. Vail and Pamela Vail, husband and wife, (hereinafter "Releasors") being of lawful age, and for and in consideration of the sum of Three Thousand Eighty Five Thousand and 00/100 Dollars ($385,000.00) paid by Allstate Insurance Company on behalf of Peter T. Gill, the receipt of which is hereby acknowledged, have released and remised, and forever discharged, and by these presents do for ourselves, our heirs, executors and assigns, remise release and forever discharge Allstate Insurance Company and Peter T. Gill ("hereinafter "Releasees"), and their heirs, executors and administrators, successors and assigns, of and from any and all actions, causes of actions, personal injuries, claims, demands, damages, costs, loss of services, expenses, compensation and all consequential damage on account of, or in any way growing out of, any and all known and unknown personal injuries to Kenneth T. Vail, including future developments thereof and any other damages and liens of any nature, as a result of a certain incident that occurred on or about June 2, 2000 at the NTI X event, in Lewisberry, Fairview Township, York County, Pennsylvania and which is the subject of a legal action filed at No. 3:02CV926 in the United States District Court, Middle District of Pennsylvania.

It is further agreed that Releasors agree to indemnify Releasees and their attorneys, and to hold Releasees and their attorneys harmless, from any and all existing and potential subrogation liens in connection with any medical treatment and other benefits, including income loss benefits, rendered to Kenneth T. Vail due to any injuries sustained by Kenneth T. Vail from the subject incident.

It is further agreed that this settlement is in compromise of a disputed claim and is not to be construed as an admission of liability on the part of the party or parties hereby released by whom liability is expressly denied.

This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

We further state that we have carefully read the foregoing release and know the contents thereof, and we executed the same as our own free acts.

IN WITNESS WHEREOF, we have hereunto set our hands and seal this *10th* day of *January*, 2003.

IN PRESENCE OF:

_____          _____ (SEAL)
                                   Kenneth T. Vail

_____          _____ (SEAL)
                                   Pamela Vail

**EXHIBIT Q**

**St Luke's**
HOSPITAL
& Health Network

801 Ostrum Street
Bethlehem, PA 18015
610-954-4000

January 10, 2002





EXHIBIT
VAIL-6
3-24-04 RDO

Kenneth Vail
4513 Greenfield Road
Bethlehem, PA 18017

Dear Kenneth:

I am pleased to extend you the offer to join our management team as the Director, Risk Management. Your annual base salary will be $ 85,000.00; to be paid bi-weekly in accordance with standard Hospital policies. You will receive the standard benefits package of a full time manager, which includes accrual of four weeks paid vacation time annually (see attached benefits sheet).

This offer of employment is contingent upon you successfully completing a pre-employment physical, which includes a drug screen. Your pre-employment physical has been scheduled at the St. Luke's Employee Health Department on February 5, 2002 at 8:30 AM.

You are scheduled to attend a New Employee Orientation on Monday, February 18, 2002. Please report to the Priscilla Payne Hurd Education Center, Room 113 by 7:45 AM. for this orientation. You are scheduled for Safety Orientation in the Priscilla Payne Hurd Education Center, Room 113 on Tuesday, February 19, 2002 at 8:00 AM.

I am extremely pleased that you will be joining the St. Luke's Hospital Management Team, and I am certain you will add an important and necessary perspective to the team. I hope you find your employment to be professionally stimulating and challenging. Congratulations, and I look forward to your arrival.

If you have questions, please call me at 954-3707.

Sincerely,

*Bob*

Welcome to St. Lukes!

Robert P. Zimmel
Senior Vice President
Human Resources

RPZ/bp

Enclosures

*Big-city medicine. Hometown care.*

**EXHIBIT R**





EXHIBIT

VAIL - 7

3-24-04 MC

EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER

**St. Luke's**
HEALTH NETWORK

| Position(s) you are applying for: |
| 1. DIRECTOR OF RISK MANAGEMENT |
| 2. |
| *If Nursing, list preferred unit or area |

801 Ostrum Street • Bethlehem, Pennsylvania  18015-1065 • 610 / 954-3715

**TO THE APPLICANT:** We appreciate your interest in St. Luke's Health Network and assure you that we are genuinely interested in your qualifications. A clear understanding of your relevant background and work history will aid us in potential job placement.

**ST. LUKE'S HEALTH NETWORK** will not discriminate against an applicant or employee because of race, sex, age, sexual preference, religious creed, national origin, non job-related disability, or any veteran status.

**Directions:** Please print all information and sign after completion.

## PERSONAL INFORMATION

| Last Name | First Name | Middle | Date |
| VAIL | KENNETH | T. | 10-18-2001 |

| Present Address | Street | City | State | Zip |
| 4513 GREENFIELD ROAD | BETHLEHEM | PA | 18017 |

| Social Security Number | Present Telephone Number | Other Telephone Number where you can be reached |
| 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 | (610) 509-6822 | (610) 866-3061 - HOME  (610) 974-9770 - FAX |

Are you authorized to work in the United States? ☒ Yes ☐ No    Proof of citizenship or immigration status will be required upon employment.

Are you under 18 years of age? ☐ Yes ☒ No    If yes, working papers are required.

Have you ever been employed by the St. Luke's Hospital and Health Network before? ☐ Yes ☒ No    If yes, when and in what capacity?

Are you able to perform the essential functions of the position(s) for which you are applying? ☒ Yes ☐ No
If no, please describe in detail.

Were you ever employed under another name? ☐ Yes ☒ No    If yes, what name? _____

Have you ever been convicted of a felony or a misdemeanor? ☐ Yes ☒ No    If yes, explain. Give dates and sentence. Conviction will not necessarily disqualify you from employment, rather the Health Network will make a determination as to the extent to which the conviction relates to your suitability for employment and the position for which you have applied.

How were you referred to St. Luke's Health Network?
☒ Advertisement ☐ Employment Agency ☐ Walk-In ☐ Employee _____ ☐ Other _____

Are you available to work?
☒ Full Time ☐ Per Diem ☐ Days ☐ Nights ☐ Weekends ☐ Any shift
☐ Part Time ☐ On call ☐ Evenings ☐ Rotating ☐ Holidays

**Skills:** (For clerical and administrative functions only)
☐ Typing _____ wpm ☒ Computer ☐ Dictaphone ☐ Other _____
☐ Medical Terminology ☒ Word Processor ☐ Shorthand _____

**REFERENCES:** Former Supervisors or others who have first-hand knowledge of your abilities. (Please do not list relatives or personal references.)

| NAME | ADDRESS | TELEPHONE | TYPE OF BUSINESS |
|---|---|---|---|
| TOM STARK | 4718 TOWNSHIP LINE ROAD  PINEVILLE, PA 18946 | 215.598.  7423 (HOME) | EBE COMPANIES FORMER  REGIONAL VICE PRESIDENT |
| SHERRI TUMOLO | 121 E. 5TH ST PO BOX 359  BLOOMSBURG PA 17815 | 570-784  1673 (OFFICE) | INSURANCE AGENCY MEMBER  NEIGHBORHOOD ADVISORS OF  BARTON INS. AGENCY |
| JIM STERNER | 3630 JACKSONVILLE ROAD  BETHLEHEM PA 18017 | 610.866.  1140 (OFFICE) | HANOVER TOWNSHIP MANAGER  - 1995-1999 |

FORM NO. 14944
REV. 06/00

## MILITARY SERVICE

| | | |
|---|---|---|
| you serve in the U.S. Armed Forces?  ☐ Yes  ☒ No | Branch of Service | |
| you receive an Honorable Discharge?  ☐ Yes  ☐ No  ☐ Other | | |

o, please explain.

nciple duties performed

## EDUCATION

| ME OF SCHOOL | STREET | CITY | STATE | DIPLOMA/DEGREE | COURSE OF STUDY |
|---|---|---|---|---|---|
| h School  EASTON AREA HIGH SCHOOL | | EASTON, PA | | DIPLOMA | COLLEGE PREP |
| lege, Technical School or Nursing School  LAFAYETTE COLLEGE | | EASTON, PA | | BA DEGREE | ECONOMICS/ BUSINESS |
| duate School  INSURANCE INSTITUTE OF AMERICA, MALVERN PA | | | | ARM; ALCM | RISK MANAGEMENT |
| er special programs or courses  VARIOUS, PLEASE REFER TO RESUME FOR PARTIAL LISTING; ASSOCIATE IN RISK MANAGEMENT; ASSOCIATE IN LOSS CONTROL MANAGEMENT; CERTIFIED SAFETY PROFESSIONAL | | | | | |

### COMPLETE THIS SECTION IF APPLYING FOR POSITION(S) REQUIRING A LICENSE OR CERTIFICATION

| License or Certification # | | Type | | Expiration Date |
|---|---|---|---|---|
| PA ACT 235/F  019062  EXP. 06/01/2006 | | | | |

| er State License or Certification  State | | License or Cert. # | | Expiration Date |
|---|---|---|---|---|

cent graduate, date scheduled to take exam

## EMPLOYMENT HISTORY
### (List most recent first)

| COMPANY OR EMPLOYER | PERIOD | JOB TITLE | SALARY WK or MO | BRIEF DESCRIPTION OF DUTIES | REASON FOR LEAVING |
|---|---|---|---|---|---|
| Name: KENNETH T. VAIL  Address: 4512 GREENFIELD ROAD  BETHLEHEM PA 18017 | from 5/2000 to PRESENT | RISK MANAGEMENT CONSULTANT | 85/HR | RISK MANAGEMENT CONSULTING SERVICES | |
| Name: ERI COMPANIES  Address: 1065 HIGHWAY 315, SUITE 200  WILKES-BARRE PA 18702 | from 12/1998 to 5/2000 | BRANCH MANAGER  ACCIDENT PREVENTION MANAGER | 85280/YR | SPECIALTY WC INSURANCE COMPANY MANAGER | COMPANY ACQUIRED & DOWNSIZED & BRANCH CLOSED |
| CIGNA PROPERTY & CASUALTY CO's.  Address: ALLENTOWN, PHILADELPHIA, HARRISBURG, VARIOUS LOCATIONS PITTSBURGH | from 1/1984 to 1998 | LOSS CONTROL MANAGER | 72,000/YR | LOSS CONTROL, RISK MANAGEMENT CONSULTING SERVICES | COMPANY DOWNSIZED, OFFICE CLOSED |

I hereby affirm the information provided on this application (and accompanying resume, if any) is true and complete to the best of my knowledge. also agree that any falsified information or significant omissions may disqualify me from further consideration for employment and may be considered justification for dismissal if discovered at a later date.

I authorize a thorough investigation of my past employment and activities, agree to cooperate in such investigation, and release from all liability o responsibility all persons and corporations requesting or supplying such information. I further authorize any physician or hospital to release any information which may be necessary to determine my ability to perform the essential functions of the position for which I am being considered or any future job in the event that I am hired.

I understand that my employment is contingent upon my passing a job-related pre-employment physical conducted by the Health Network which includes a drug screen. I hereby agree to submit to any lawful drug test that may be required as a condition of employment or continued employment and understand that refusal to submit to such testing during the course of my employment may result in disciplinary action, up to and including discharge

I understand that my employment is terminable-at-will, that I am not being employed for any specific time, and that this application is not and is no intended to be a contract for continued employment. No manager or representative of the Health Network has the authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to this paragraph.

In the event of resignation, retirement or termination, I agree to return all St. Luke's Health Network property loaned to me, such as identification badge, uniforms, library books, keys, Employee Handbook, etc.

o. 14944
/00

_____  10-18-2001
Signature/Date

**EXHIBIT S**

RECD APR 2 1 2004



BLANK ROME LLP
COUNSELORS AT LAW

| | |
|---|---|
| Phone | (215) 569-5584 |
| Fax | (215) 832-5594 |
| Email | reid@blankrome.com |

240540

April 9, 2004

**VIA FEDERAL EXPRESS**

Beth Pretti
and/or Lehigh Valley Home Care
2166 South 12th Street, Suite 101
Allentown, PA 18103



448 Correspondence Attorney

    Re:   **Kenneth T. Vail v. Harleysville Group, Inc.**
               **Civil Action No. 02CV2933**

Dear Sir or Madam

    Please be advised that this office represents the Defendant in the above-referenced matter. Enclosed is a signed authorization by Kenneth T. Vail and a subpoena requiring you to produce records on Wednesday, April 21, 2004  The subpoena seeks copies of any and all records relating to Kenneth T. Vail, date of birth, November 16, 1957, Social Security No 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. A personal appearance will not be necessary if you provide us, no later than Wednesday, April 21, 2004, with copies of these records  The records should be sent to my attention at Blank Rome LLP, One Logan Square, Philadelphia, PA 19103  We apologize for burdening you with this request, but it is necessary to defend against the claims brought by Mr Vail

    Thank you for your attention to this matter. Please advise us of any costs associated with this request, and we will promptly reimburse you. If you have any questions regarding compliance with this subpoena, please do not hesitate to contact me

RECEIVED
APR 1 4 2004
By

Very truly yours,

Julie E. Reid

JER/vc
Enclosure
cc:   Donald P. Russo, Esquire

CHARTONE
4-14-04
Date
Request #
Pages
Assoc
non
pre  abs  60$
comp

One Logan Square  18th & Cherry Streets  Philadelphia, PA 19103-6998
www.BlankRome.com

120113.00201/21263  Delaware  •  Florida  •  Maryland  •  New Jersey  •  New York  •  Ohio  •  Pennsylvania  •  Washington, DC

*RECEIVED 3-19-2004*
*KTV*



1. **Patient.** I, Kenneth T. Vail, date of birth November 16, 1957, Social Security No **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** __, authorize Beth Pretti, PT and her personnel to use or disclose health information as described in this form.

2. **Identity of Person Authorized to Receive this Information.**

   Beth Pretti, PT may disclose (give) my health information identified below to Blank Rome LLP, One Logan Square, Philadelphia, PA 19103

3. **Description of Reason For Disclosure.** Blank Rome LLP may use or disclose my health information for the following purpose(s):

   ( ____ ) At request of patient [No description required]

   ( XX ) Other: Please describe purpose _____ in response to subpoena in litigation _____

4. **Description of Information to be Used or Disclosed.** I authorize the use or disclosure of the following health information and/or records:

   My complete medical file, including records relating to treatment received, doctor's notes, and history of prescriptions. _____

---

\*The following items must be initialed to be included in the use or disclosure of these types of health information:

   __X__  \*HIV/AIDS related health information and/or records

   __X__  \*Mental health information and/or records

   __X__  \*Genetic testing information and/or records

   __X__  \*Drug/alcohol diagnosis, treatment, and/or referral information

   Pennsylvania law restricts the purposes for which disclosures may be made. Federal regulations require a description of how much and what kind of information is to be disclosed. Federal law prohibits the redisclosure of such information. _____

---

5. **Expiration.** This authorization expires upon the following date or event: __~~forever~~ 90 DAYS — *KTV* from date signed _____ (NINETY) DAYS

120113.00201/21253835v1

6. **Notice To Patient**

    a.    You may revoke this authorization at any time except to the extent Beth Pretti, PT has taken action in reliance upon this authorization.

    b.    You may refuse to sign this authorization. You do not need to sign this authorization to receive services from Beth Pretti, PT. If you refuse to sign this authorization, you will not be denied any treatment or benefits to which you were otherwise entitled.

    c.    Once your information is disclosed pursuant to this authorization, it may no longer be protected by Federal privacy law, and the person or organization that receives your information may have the legal right to disclose the information to other people or organizations without your knowledge or consent.

_____     03-31-2004
Signature Patient or Personal Representative          Date

_____
N/A
Print Name of Personal Representative          Relationship of Personal Representative
(if applicable)          to Patient

If this authorization is signed by someone who is not the patient listed at the top of this form, provide a description of the signer's authority to act for the patient.

_____

The patient will be provided with one copy of this form.

Issued by the
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Kenneth T Vail, | . | **SUBPOENA IN A CIVIL CASE** |
| Plaintiffs, | : | |
| v | : | |
| Harleysville Group, Inc , | : | |
| Defendants | : | Civil Action No.[1] 02-CV-2933 |

TO·  Beth Pretti, PT and/or Lehigh Valley Home Care
2166 South 12ᵗʰ Street, Suite 101, Allentown, PA 18103

☐    **YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.**

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒    **YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Blank Rome LLP, One Logan Square, Philadelphia, PA 19103** | **Wednesday, April 21, 2004 – 10:00 a.m.** |

☒    **YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):**

**All records relating to Kenneth T. Vail, Date of birth November 16, 1957,
Social Security No. 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**

| PLACE | DATE AND TIME |
|---|---|
| **Blank Rome LLP, One Logan Square Philadelphia, PA 19103** | **Wednesday, April 21, 2004 – 10:00 a.m.** |

☐    **YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.**

| PREMISES | DATE AND TIME |
|---|---|

**Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).**

| ISSUING OFFICER SIGNATURE AND TITLE, Attorney for Defendant | DATE April 9, 2004 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER.
**Julie E. Reid, Esquire, Blank Rome LLP, One Logan Square, Philadelphia, PA 19103
(215-569-5584)**

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

---

[1]  If action is pending in district other than district of issuance, state district under case number



**BLANK ROME** LLP

COUNSELORS AT LAW

| | |
|---|---|
| *Phone* | *(215) 569-5584* |
| *Fax* | *(215) 832-5594* |
| *Email* | *reid@blankrome.com* |

April 9, 2004

**VIA FEDERAL EXPRESS**

Carrie Hrichak
and/or Lehigh Valley Home Care
2166 South 12th Street, Suite 101
Allentown, PA 18103

> Re:  **Kenneth T. Vail v. Harleysville Group, Inc.**
>      <u>**Civil Action No. 02CV2933**</u>

Dear Sir or Madam:

Please be advised that this office represents the Defendant in the above-referenced matter. Enclosed is a signed authorization by Kenneth T. Vail and a subpoena requiring you to produce records on Wednesday, April 21, 2004. The subpoena seeks copies of any and all records relating to Kenneth T. Vail, date of birth, November 16, 1957, Social Security No. 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. A personal appearance will not be necessary if you provide us, no later than Wednesday, April 21, 2004, with copies of these records. The records should be sent to my attention at Blank Rome LLP, One Logan Square, Philadelphia, PA 19103. We apologize for burdening you with this request, but it is necessary to defend against the claims brought by Mr. Vail.

Thank you for your attention to this matter. Please advise us of any costs associated with this request, and we will promptly reimburse you. If you have any questions regarding compliance with this subpoena, please do not hesitate to contact me.

Very truly yours,

Julie E. Reid

JER/vc
Enclosure
cc:    Donald P. Russo, Esquire

One Logan Square  18th & Cherry Streets  Philadelphia, PA 19103-6998
www.BlankRome.com

120113 00201/21263 Delaware   •   Florida   •   Maryland   •   New Jersey   •   New York   •   Ohio   •   Pennsylvania   •   Washington, DC

6. **Notice To Patient**

    a.    You may revoke this authorization at any time except to the extent Carrie Hrichak, PT has taken action in reliance upon this authorization.

    b.    You may refuse to sign this authorization. You do not need to sign this authorization to receive services from Carrie Hrichak, PT . If you refuse to sign this authorization, you will not be denied any treatment or benefits to which you were otherwise entitled.

    c.    Once your information is disclosed pursuant to this authorization, it may no longer be protected by Federal privacy law, and the person or organization that receives your information may have the legal right to disclose the information to other people or organizations without your knowledge or consent.

_____      01 - 31 - 2004
Signature Patient or Personal Representative     Date

_____N/A_____
Print Name of Personal Representative      Relationship of Personal Representative
(if applicable)      to Patient

If this authorization is signed by someone who is not the patient listed at the top of this form, provide a description of the signer's authority to act for the patient.

_____

The patient will be provided with one copy of this form.

120113 00201/21253833v1

*Received 3-18-2004*
*KTV*



1. **Patient**.  I, Kenneth T. Vail, date of birth November 16, 1957, Social Security No. 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 __, authorize Carrie Hrichak, PT and her personnel to use or disclose health information as described in this form.

2. **Identity of Person Authorized to Receive this Information**.

   Carrie Hrichak, PT may disclose (give) my health information identified below to Blank Rome LLP, One Logan Square, Philadelphia, PA 19103

3. **Description of Reason For Disclosure**.  Blank Rome LLP may use or disclose my health information for the following purpose(s).

   (_____) At request of patient [No description required]

   ( XX ) Other: Please describe purpose _____ in response to subpoena in litigation

4. **Description of Information to be Used or Disclosed**.  I authorize the use or disclosure of the following health information and/or records:

   My complete medical file, including records relating to treatment received, doctor's notes, and history of prescriptions.

---

*The following items must be initialed to be included in the use or disclosure of these types of health information:

   __X__   *HIV/AIDS related health information and/or records

   __X__   *Mental health information and/or records

   __X__   *Genetic testing information and/or records

   __X__   *Drug/alcohol diagnosis, treatment, and/or referral information

   Pennsylvania law restricts the purposes for which disclosures may be made.  Federal regulations require a description of how much and what kind of information is to be disclosed.  Federal law prohibits the redisclosure of such information _____

---

5. **Expiration**.  This authorization expires upon the following date or event. _90 DAYS_ ~~come one~~ from —KTV

   date signed _____   (NINETY) DAYS

**Issued by the**
## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kenneth T Vail, | **SUBPOENA IN A CIVIL CASE** |
| Plaintiffs, . | |
| v | |
| Harleysville Group, Inc., | |
| Defendants : | Civil Action No [1] 02-CV-2933 |

TO. Carrie Hrichak, PT and/or Lehigh Valley Home Care
2166 South 12th Street, Suite 101, Allentown, PA 18103

☐　　**YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.**

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒　　**YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.**

| PLACE OF DEPOSITION | DATE AND TIME· |
|---|---|
| Blank Rome LLP, One Logan Square Philadelphia, PA 19103 | Wednesday, April 21, 2004 – 10:00 a.m. |

☒　　**YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):**

**All records relating to Kenneth T. Vail, Date of birth November 16, 1957, Social Security No. 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**

| PLACE | DATE AND TIME |
|---|---|
| Blank Rome LLP, One Logan Square Philadelphia, PA 19103 | Wednesday, April 21, 2004 – 10:00 a.m. |

☐　　**YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.**

| PREMISES | DATE AND TIME |
|---|---|
| | |

　　**Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).**

| ISSUING OFFICER SIGNATURE AND TITLE　_[signature]_　, Attorney for Defendant | DATE April 9, 2004 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
**Julie E. Reid, Esquire, Blank Rome LLP, One Logan Square, Philadelphia, PA 19103 (215-569-5584)**

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1]　If action is pending in district other than district of issuance, state district under case number

# TOTAL HIP ARTHROPLASTY (PT) *Home Care Steps*®

*Discharge Summary*

Patient Name: Kenneth Vail

ID #: 21463

Primary Medical Diagnosis: (R) femur fracture

Dates of Service: 6/14/00                    to      7/7/00

**Reason for discharge:**

☑ Client no longer needs service
   ✓ Goals achieved
   ___ Client reached maximal level
☐ Admitted to institution
   ___ Hospital ___ Long term
                 care facility
☐ Hospice

☐ Expired
   ___ At home ___ In hospital
☐ Moved out of area
☐ Unable to locate
☐ Client/family request
☐ Physician request
☐ Client unwilling to participate in
   treatment plan

☐ Unsafe for staff
☐ Organization unable to provide
   service
☐ Other _____
   _____
   _____

**Discharge Disposition:**

☑ Self
☑ Family
☐ Acute inpatient hospital
☐ Skilled nursing facility
☐ Residence that provides
   formal support
☐ Other home care
   organization except hospice
☐ Other _____

**Progress Toward Goals**

| Care Elements | Outcomes: Use "✓" for met; "0" for not met. | Comments |
|---|---|---|
| DISEASE PROCESS | ✓ Verbalizes adverse S/S to report.<br>___ Demonstrates compliance with total hip precautions.<br>___ Other:_____ | |
| ACTIVITY/ TREATMENTS | ___ Demonstrates increased tolerance.<br>___ Demonstrates adequate balance.<br>✓ Demonstrates adequate hip strength.<br>___ Demonstrates independence with appropriate transfers.<br>✓ Demonstrates independent ambulation.<br>✓ Demonstrates independence in ambulation up/down steps.<br>✓ Demonstrates independence with final upgraded HEP.<br>✓ Demonstrates ability to enter/exit the home independently.<br>✓ Other: PROM (R) hip WFL | ROM 120° V, 30° PROM abd strength F+/G iliopsoas (R) LE. |
| SAFETY | ___ Demonstrates appropriate/safe use of therapeutic equipment.<br>___ Other:_____ | |
| TREATMENTS | ___ Demonstrates tolerance of exercises.<br>___ Demonstrates independence with home exercise program. | |
| PSYCHO/ SOCIAL | ___ Demonstrates motivation toward achieving increased level of function.<br>___ Other:_____ | |
| INTERTEAM SERVICES/ COMMUNITY REFERRALS | ___ Verbalizes importance of follow-up visits with physician and other services.<br>___ Other:_____ | |

**DISCHARGE SUMMARY** (summary and status of identified problems, overall status, services provided and plans for any post-discharge needs): Pt seen for 11 visits tiw for PROM (R) hip, He is (I) c home mobility, has achieved ROM WNL. He/his family are (I) c HEP. He does not require further home PT at this time.

Signature/Title PT ___Anna (R) Hincher PT___    Date ___7.7.00___

☐ **Physician Signature Required** _____    Date _____

☐ **For Your Information Only**

Copyright©, 1997 VNA First, All Rights Reserved

**(Visit  07/07/2000)**

**Patient:** VAIL, KENNETH T
**Patient ID:** 00188469
**Admit ID:** 00021463
**DOB:** 11/16/1957
**SOC:** 06/14/2000

**Contains**
  Discharge - Not to Inpatient Facility (B1)

*Lehigh Valley Home Care*
2166 S 12TH Street

Allentown, PA 18103
610 402 7300

This is a converted assessment now
contained within a visit.

Personnel: HRICHAK, CARRIE  PT

---

## OASIS Assessment Items For Discharge - Not to Inpatient Facility (B1)

Oasis Correction:    Not Extracted

Clinical Record Items

| | |
|---|---|
| M0010 Agency Medicare ID | 397023 |
| M0012 Agency Medicaid ID | 00901571 |
| M0014 Branch State | PA |
| M0016 Branch ID Number | 23 1689692 |
| M0020 Patient ID Number | 00021463 |
| M0030 Start of Care Date | 06/14/2000 |
| M0032 Resumption of Care Date | NA - Not Applicable |
| M0040 Patient Name | VAIL          KENNETH   T |
| M0050 Patient State of Residence | PA |
| M0060 Patient Zip Code | 18017 |
| M0063 Medicare Number | NA - No Medicare |
| M0064 Patient Social Security Number | 174526320 |
| M0065 Medicaid Number | NA - No Medicaid |
| M0066 Patient Date of Birth | 11/16/1957 |
| M0069 Patient Gender | 1 - Male |
| M0072 Primary Referring Physician ID | F56161 |
| M0080 Discipline of Person Completing Assessment | 2 - PT |
| M0090 Date Assessment Completed | 07/07/2000 |
| M0100 Reason for Assessment | 9 - Discharge from agency |
| M0150 Current Payment Sources for Home Care | 9 - Private HMO/managed care |
| | 10 - Self-pay |
| M0200 Medical or Treatment Regimen: Change in Past 14 Days | 1 - Yes |
| M0210 Regimen Change | (c) OPEN WOUND OF HIP AND THIGH |
| | 890 |
| | FRACTURE OF UNSPECIFIED PART OF NECK OF FEMUR, OPEN |
| | 8209 |
| M0220 Prior Condition | 7 - None of the above |
| M0250 Therapies Received at Home | 4 - None of the above |
| M0280 Life Expectancy | 0 - Life expectancy is greater than 6 months |
| M0290 High Risk Factor | 5 - None of the above |
| M0300 Current Residence | 1 - Patient's owned or rented residence (house/apartment or mobile home owned or rented by patient/couple/significant other) |

---

(Visit 07/07/2000)

| Patient: VAIL, KENNETH T | Patient ID: 00188469 | Admit ID: 00021463 |

M0310 Structural Barriers — 1 - Stairs inside home which MUST be used by patient (e.g. to get to toileting/sleeping/eating areas)
2 - Stairs inside home which are used optionally (e.g. to get to laundry facilities)

M0320 Safety Hazards — 0 - None

M0330 Sanitation Hazards — 0 - None

M0340 Patient Lives With — 2 - With spouse or significant other
3 - With other family member

M0350 Assisting Person — 1 - Relatives/friends or neighbors living outside the home

M0360 Primary Caregiver — 1 - Spouse or significant other

M0370 Frequency of Primary Caregiver Assistance — 2 - Several times during day

M0380 Type of Primary Caregiver Assistance — 3 - Environmental support (housing/home maintenance)
4 - Psychosocial support (socialization/companionship/recreation)
5 - Advocates or facilitates patient's participation in appropriate medical care

Caretaking / Parenting — 1 - Adequate - No problems noted

M0410 Speech and Oral Expression — 0 - Expresses complex ideas/feelings and needs clearly/completely and easily in all situations with no observable impairment

M0420 Frequency of Pain — 2 - Daily but not constantly

M0430 Experiencing Intractable Pain — 0 - No

M0440 Does This Patient Have a Skin Lesion or Open Wound - This Excludes Ostomies — 0 - No [Go to Respiratory Status]

M0490 When Dyspneic — 0 - Never; patient is not short of breath

M0500 Respiratory Treatments — 4 - None of the above

M0510 Treated for Urinary Tract Infection in Past 14 Days — 0 - No

M0520 Urinary Incontinence or Urinary Catheter Present — 0 - No incontinence or catheter (includes anuria or ostomy for urinary drainage) [Go to M0540]

M0540 Bowel Incontinence Frequency — 0 - Very rarely or never has bowel incontinence

M0550 Ostomy for Bowel Elimination — 0 - Patient does NOT have an ostomy for bowel elimination

M0560 Cognitive Functioning — 0 - Alert/oriented/able to focus and shift attention/comprehends and recalls task directions independently

M0570 When Confused (Reported or Observed) — 0 - Never

M0580 When Anxious (Reported or Observed) — 0 - None of the time

M0590 Depressive Feelings — 6 - None of the above feelings observed or reported

M0600 Behavior — 7 - None of the above behaviors observed or reported

M0610 Behaviors demonstrated at least once a week — 7 - None of the above behaviors demonstrated

M0620 Frequency of Behavior Problems — 0 - Never

M0630 Receives Psychiatric Nursing — 0 - No

M0640 Grooming — 0 - Able to groom self unaided with or without the use of assistive devices or adapted methods

M0650 Dress Upper Body — 0 - Able to get clothes out of closets and drawers/put them on and remove them from the upper body without assistance

M0660 Dress Lower Body — 0 - Able to obtain/put on and remove clothing and shoes without assistance

M0670 Bathing — 1 - With the use of devices is able to bathe self in shower or tub independently

M0680 Toileting — 0 - Able to get to and from the toilet independently with or without a device

M0690 Transferring — 0 - Able to independently transfer

M0700 Ambulation — 0 - Able to independently walk on even and uneven surfaces and climb stairs with or without railings (i.e. needs no human assistance or assistive devices)

M0710 Feeding — 0 - Able to independently feed self

**(Visit  07/07/2000)**

| | |
|---|---|
| Patient: VAIL, KENNETH T | Patient ID: 00188469 | Admit ID: 00021463 |

M0720 Prepare Light Meals — 0 - (a) Able to independently plan and prepare light meals for self or reheat delivered meals OR (b) is physically/cognitively and mentally able to prepare light meals on a regular basis but has not routinely performed light meal preparation in the past

M0730 Transportation — 1 - Able to ride in a car only when driven by another person OR able to use a bus or handicap van only when assisted or accompanied by another person

M0740 Laundry — 2 - UNABLE to do any laundry due to physical limitation or needs continual supervision and assistance due to cognitive or mental limitation

M0750 Housekeeping — 1 - Able to perform only LIGHT housekeeping (e.g. dusting/wiping kitchen counters) tasks independently

M0760 Shopping — 2 - UNABLE to go shopping but is able to identify items needed/place orders and arrange home delivery

M0770 Telephone Use — 0 - Able to dial numbers and answer call appropriately and as desired.

M0780 Management of Oral Medications — 0 - Able to independently take the correct oral medication(s) and proper dosage(s) at the correct times

M0790 Management of Inhalant Medications — NA - No inhalant/mist medications prescribed

M0800 Management of Injectable Medications — NA - No injectable medications prescribed

M0810 Patient Management of Equipment — NA - No equipment of this type in care [Go to M0830]

M0830 Emergent Care — 0 - No emergency care services [Go to M0855]

M0855 Inpatient Facility — NA - No inpatient facility admission

M0870 Discharge Disposition — 1 - Patient remained in the community (not in hospital/nursing home/or rehab facility)

M0880 Assistance after Discharge — 2 - Yes assistance or services provided by family or friends

M0903 Date of Last Home Visit — 07/07/2000

M0906 Discharge, Transfer, Death Date — 07/07/2000

---

Created:   7/7/2000   12:30:00PM
Completed:   7/7/2000   12:37:00PM
Author:   HRICHAK, CARRIE  PT

Printed:   4/13/2004   10:13:27AM

**EXHIBIT T**

# Ken Vail

**From:**      "Vail, Kenneth" <KVail@harleysvillegroup.com>
**To:**        "Weinstein, Gary" <GWeinste@harleysvillegroup.com>; "Geckeler, Alice"
               <AGECKELE@harleysvillegroup.com>
**Cc:**        <kenmtb1@msn.com>
**Sent:**      Thursday, June 22, 2000 1:14 PM
**Subject:**   Ken Vail's Medical Progress Update



EXHIBIT

VAIL - 15
3-24-04 WDC

Gary & Alice
I met with my orthopedic surgeon, Dr. Spence Reid, at HMC yesterday (6/21).
He was pleased with my progress. The sutures and staples were removed. He
instructed my physical therapist to increase my range of motion excercises.
He instructed me not to drive or put body-weight on my trauma leg until he
has confirmed significant structural bone/tissue healing & OK's doing so.

Dr. Reid approved me to work at home, provided that I take rest breaks as
needed to minimize pain & pressure on the trauma. I am feeling relatively
better, and I'm doing OK with the work at home schedule. Dr. Reid is OK with
it, also.

My next visit to Dr. Reid is scheduled for July 19, 2000. Dr. Reid plans to
take xrays on 7/19 to assess internal healing. He does not want me to drive
or put bodyweight on my trauma leg before the next visit. Once he has a
chance to read the xrays, he will be able to advise when I can start to do
more. He said this type of injury simply "needs time to heal the structural
members and connective tissue".

Any questions at this point, please let me know. I'll keep you updated about
my progress. I look forward to returning to full productivity as soon as I
can. More to follow after my next evaluation at HMC.
Thanks
Ken